1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 02, 2020

SEAN F. McAVOY, CLERK

4

5

6

7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

8

9

10

11

12

| | |
|---|---|
| CARISSA F.,<br><br>       Plaintiff,<br>  v.<br><br>ANDREW M. SAUL, Commissioner of the Social Security Administration,<br><br>      Defendant. | No: 1:19-CV-03126-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

13

14      BEFORE THE COURT are the parties' cross-motions for summary

15   judgment.  ECF Nos. 10, 12.  This matter was submitted for consideration without

16   oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

17   represented by Special Assistant United States Attorney Joseph J. Langkamer.  The

18   Court, having reviewed the administrative record and the parties' briefing, is fully

19   informed.  For the reasons discussed below, the Court **GRANTS, in part,**

20   Plaintiff's Motion for Summary Judgment, ECF No. 10, and **DENIES** Defendant's

21   Motion for Summary Judgment, ECF No. 12.

ORDER ~ 1

## JURISDICTION

Plaintiff Carissa F.[1] filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on March 15, 2016, Tr. 91-92, alleging disability since August 1, 2015, Tr. 240, 247, due to fibromyalgia, degenerative disc disease, Minear's disease, chronic headaches, numbness in her hands bilaterally, and thoracic outlet, Tr. 274.  Benefits were denied initially, Tr. 140-55, and upon reconsideration, Tr. 158-69.  A hearing before Administrative Law Judge Ilene Sloan ("ALJ") was conducted on February 6, 2018.  Tr. 37-61.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational expert Kimberly Mullinax.  *Id*.  The ALJ denied benefits on July 5, 2018.  Tr. 15-28.  The Appeals Council denied Plaintiff's request for review on April 9, 2019.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Plaintiff was 48 years old at the alleged onset date. Tr. 240. She received her GED in 1985. Tr. 275. Plaintiff's reported work history includes jobs as a phlebotomist and a paraeducator. Tr. 275, 288. At application, she stated that she stopped working on December 1, 2009, due to her conditions. Tr. 274.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

ORDER ~ 3

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

ORDER ~ 4

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and

mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2015, the alleged onset date.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar spine degenerative disc disease; status-post C5-6 anterior cervical discectomy and fusion; and status post bilateral carpal tunnel release.  Tr. 19.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 20.  The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she has the following limitations:

> [T]he claimant can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  The claimant must avoid concentrated exposure to hazards.  She can occasionally reach overhead bilaterally.  She can push/pull, such as operations of foot pedals occasionally.  The claimant can stand/walk for four out of eight hours and sit for six out of eight hours.  She can engage in frequent handling and fingering.

Tr. 21.  At step four, the ALJ identified Plaintiff's past relevant work as

ORDER ~ 7

telemarketer and a teacher aid, and found that she is capable of performing this past relevant work both as actually performed and as generally performed.  Tr. 26. As an alternative to a step four denial, the ALJ made a step five determination that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: cashier II and storage rental clerk.  Tr. 27.  The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2015, through the date of her decision.  Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB under Title II of the Social Security Act and SSI benefits under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for this Court's review:

1.    Whether the ALJ erred at step two;

2.    Whether the ALJ erred in weighing the medical source opinions;

3.    Whether the ALJ properly considered Plaintiff's symptom claims; and

4.    Whether the case should be remanded for an immediate award of benefits.

## DISCUSSION

**1.    Step Two**

Plaintiff challenges the ALJ's determination that her fibromyalgia was not a medically determinable impairment and that her migraines were not severe.  ECF

ORDER ~ 8

No. 10 at 4-9.

Step-two of the sequential evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"  *Id*. at 1290.

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment.  20 C.F.R. §§ 404.1521, 416.921.  "[O]nce a claimant has shown that [s]he suffers from a medically determinable impairment, [s]he next has the burden of proving that these impairments and their symptoms affect [her] ability to perform basic work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe.  *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

In her step two determination, the ALJ found that Plaintiff's fibromyalgia is

ORDER ~ 9

not a medically determinable impairment and Plaintiff's migraines are not severe.

Tr. 19.  In addressing Plaintiff's fibromyalgia, the ALJ found that the record does

not include evidence of the diagnostic criteria for fibromyalgia as set forth in

S.S.R. 12-2p.  *Id*.  However, this determination is not supported by substantial

evidence.

Social Security Ruling 12-2p provides two sets of diagnostic criteria for

fibromyalgia, based on the 1990 American College of Rheumatology Criteria for

the Classification of Fibromyalgia and the 2010 American College of

Rheumatology Preliminary Diagnostic Criteria.  Under to the first set of criteria, a

person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at

least three months (acknowledging that pain may "fluctuate in intensity and may

not always  be present"); (2) she has tenderness in at least eleven of eighteen

specified points on her body; and (3) there is evidence that other disorders are not

accounting for the pain.  *Id*. at *2–3.  Under the second set of criteria, a person

suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least

three months (again, acknowledging that pain may "fluctuate in intensity and may

not always be present"); (2) she has experienced repeated manifestations of six or

more fibromyalgia symptoms, signs, or co-occurring conditions, "especially

manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking

unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3)

there is evidence that other disorders are not accounting for the pain.  *Id*. at *3.

Here, the ALJ found that the second and third prongs of both sets of diagnostic criteria are not established in the record:

> I find that the record does not include evidence of at least 11 positive tender points on physical examination or of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. Furthermore, I find that the record does not include any evidence of exclusion of other disorders that could cause the symptoms, signs, or co-occurring conditions.

Tr. 19.  However, the record does contain a physical examination showing at least 11 positive tender points on physical examination.  In Dr. Drenguis' June 15, 2016 examination showed 16 discrete tender points that persisted with distraction.  Tr. 402.  Defendant argues that there is no evidence that this tender points test matches the criteria set forth in 12-2p.  ECF No. 12 at 15.  However, this is a *post hoc* rationalization that will not be considered by the Court.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").  The record contained evidence of at least 11 tender points as required in S.S.R. 12-2p, and the ALJ failed to discuss the evidence. Therefore, whether the test was performed accurately is not an issue to be reviewed.

Furthermore, the record contains evidence that Plaintiff has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions.  The ALJ found that Plaintiff reported symptoms of fatigue,

ORDER ~ 11

1    digestive issues, insomnia, and intermittent confusion which was not reported

2    elsewhere in the record.  Tr. 19.  However, on May 1, 2015 Plaintiff reported

3    difficulty falling asleep and difficulty staying asleep.  Tr. 366.  Plaintiff has a

4    diagnostic history of insomnia, depression, and anxiety.  Tr. 366, 373, 429, 437,

5    494, 508.  She has been treated for reflux.  Tr. 432, 437, 440, 443, 494.  The ALJ

6    acknowledged that Plaintiff suffered from chronic headaches and identified them

7    as a medically determinable impairment.  Tr. 19.  Additionally, Plaintiff had

8    muscle aches associated with fibromyalgia.  Tr. 509.  All of these are repeated

9    manifestation of fibromyalgia symptoms and signs that can be found in the record.

10    Again, demonstrating that the ALJ's determination is not supported by substantial

11    evidence.

12        Third, the ALJ found that while Dr. Drenguis diagnosed fibromyalgia he

13    failed to exclude other causes for her symptoms.  Tr. 19.  This is also not supported

14    in the record.  Dr. Drenguis reviewed  evidence concerning Plaintiff's cervical

15    stenosis and chronic pain.  Tr. 399.  Additionally, Dr. Drenguis ordered x-rays of

16    Plaintiff's cervical and thoracic spine.  Tr. 402.  Therefore, the ALJ's step two

17    determination finding that Plaintiff's fibromyalgia was not medically determinable

18    is not supported my substantial evidence.

19        The ALJ also found that Plaintiff's migraine headaches are medically

20    determinable, but not severe.  Tr. 19.  She stated that Plaintiff "testified that her

21    migraines had improved and that she was not on any medications for migraines."

*Id.* At the hearing, Plaintiff testified that "[b]efore I had the spinal stimulator in my neck, I had severe migraines. Those are doing better." Tr. 43. She confirmed that she did not take medications for her migraines. *Id.* Plaintiff further testified that prior to the spinal stimulator, migraines would result in her needing to lay in a dark room a few times a month. Tr. 49-50. Prior to the stimulator implant, Plaintiff reported headaches to her providers. Tr. 354, 361, 365-66, 370, 373, 376, 379, 405, 407, 428, 430. Plaintiff alleged an onset date of March 15, 2016, and she received her stimulator implant on October 11, 2016. Tr. 469. Therefore, by concluding that the migraines are not severe because they have improved, the ALJ fails to address the severity of Plaintiff's migraines for the period from onset to the stimulator implant. The ALJ was tasked with addressing Plaintiff's claim from the alleged onset date through the date of the decision. Tr. 190-91. Therefore, this was an error.

Defendant argues that even if the ALJ erred at step two, any error would be harmless because the step two determination was made in Plaintiff's favor. ECF No. 12 at 16. However, the ALJ also erred in her treatment of Dr. Drenguis' opinion. *See infra.* Therefore, the Court need not address whether the step two error was harmful. Upon remand, the ALJ will make a step two determination properly addressing Plaintiff's fibromyalgia and migraine headaches.

**2.   Medical Source Opinions**

Plaintiff challenges the weight the ALJ assigned to Dr. Drenguis and Dr. Dr.

Irwin.  ECF No. 10 at 9-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.*  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

On June 16, 2016, Dr. Drenguis completed a consultative examination and opined that Plaintiff could walk for four hours due to her fibromyalgia, could sit six hours, could lift and carry 20 pounds occasionally and 10 pounds frequently, could occasionally climb, balance, stoop, kneel, crouch and crawl, and could occasionally reach, handle, finger and feel. Tr. 403.  He also opined that she was limited working at heights due to her poor balance with a history of Meniere's

disease. *Id*. The ALJ gave the opinion "little weight" for three reasons: (1)
Plaintiff's fibromyalgia is not a medially determinable impairment; (2) her lumbar
sprain is not a medically determinable impairment; and (3) the record does not
support a limitation to occasional reaching, handling, fingering, and feeling.

The first reason the ALJ provided, that Plaintiff's fibromyalgia is not a
medically determinable impairment at step two, is not supported by substantial
evidence. As addressed at length above, the ALJ's determination regarding
Plaintiff's fibromyalgia was not supported by the evidence in the record.

The ALJ's second reason for rejecting the opinion, that lumbar sprain is not
a medically determinable impairment, is not specific and legitimate. The ALJ
found Plaintiff's lumbar spine degenerative disc disease to be a severe impairment
at step two. Tr. 19. Dr. Drenguis found that Plaintiff had low back pain, stating
that "[o]n today's examination, there is tenderness. There were no radicular
findings. No x-rays are available to evaluate degenerative processes. This is
consistent with at least a chronic lumbar sprain. Prognosis is fair." Tr. 403.
Therefore, the ALJ's conclusion that Dr. Drenguis' opinion should be rejected
because he conservatively diagnosed her with a lumbar strain is inconsistent with
the step two finding of a severe impairment of degenerative disc disease of the
lumbar spine. Therefore, this reason does not meet the specific and legitimate
standard.

The ALJ's third reason for rejecting the opinion, that the limitations to

occasional reaching, handling, fingering, and feeling is not supported in the record,
is not specific and legitimate.  Inconsistency with the majority of objective
evidence is a specific and legitimate reason for rejecting physician's opinions.
*Batson*, 359 F.3d at 1195.  However, the evidence that the ALJ relies upon to find
that the opinion is unsupported fails to account for the record as a whole.  The
evaluation in which Plaintiff reported good results from her carpal tunnel release is
dated May 28, 2015.  Tr. 405-07.  This is the beginning of the relevant period, and
one year prior to Dr. Drenguis' opinion.  What the ALJ failed to address was that
this same appointment discussed a reemergence of symptoms in her upper
extremities, specifically her shoulders.  Tr. 405-07.  She also reported to Dr.
Drenguis that her upper extremity symptoms were beginning to return.  Tr. 400.
On examination, Plaintiff had a reduced grip strength.  Tr. 401.  Additionally, her
sensory exam showed a decreased sensation in the right hand ulnar nerve
distribution and left hand median nerve distribution.  Tr. 402.  He diagnosed
Plaintiff was a mild right ulnar neuropathy and a mild left carpal tunnel syndrome.
Tr. 403.  The ALJ concluded that these mild diagnoses did not correlate with the
limitation of occasional use.  Tr. 25.  However, the ALJ appears to overlook the
reemergence of Plaintiff's symptoms in her upper extremities as a whole, and the
fact that Dr. Drenguis limited her to occasional use in all activities of the upper
extremities, including reaching, handling, fingering, and feeling.  The ALJ's
conclusion that the mild right ulnar neuropathy and a mild left carpal tunnel

syndrome cannot account for the limitation to occasional use of the entire upper extremity fails to take into account any upper extremity limitations caused by Plaintiff's cervical neck impairment, which Dr. Drenguis stated was progressing based on the symptoms demonstrated at the evaluation.  Tr. 403.  Here, the ALJ was interpreting the evidence without taking into account all the effects of the impairments in combination.  The Ninth Circuit has expressed a reluctance of relying on a judge's lay opinion of medical evidence.  *Hoffman v. Screen Actors Guild-Producers Pension Plan*, 571 Fed.Appx. 588, (9th Cir. 2014) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong.")).

Therefore, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Drenguis' opinion.  The case is remanded for the ALJ to properly address the opinion.

Plaintiff also challenged the opinion of Dr. Irwin.  ECF No. 10 at 14-15.  Since the case is being remanded for the ALJ to address Dr. Drenguis' opinion, the ALJ will also readdress Dr. Irwin's opinion.

## 3.    Plaintiff's Symptom Claims

Plaintiff challenges the ALJ's treatment of her symptom statements.  ECF NO. 10 at 15-21.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent

reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent

affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281;

*Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must

identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence,

and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this

decision." Tr. 23. The evaluation of a claimant's symptom statements and their

resulting limitations relies, in part, on the assessment of the medical evidence. *See*

20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p. Therefore, in light of the case

being remanded for the ALJ to readdress the medically determinable severe

impairments at step two and the medical source opinions in the file, a new

assessment of Plaintiff's subjective symptom statements is necessary.

**4.    Remand is Appropriate**

Plaintiff requests that the Court remand the case for an immediate award of

benefits. ECF No. 10 at 21.

The decision whether to remand for further proceedings or reverse and

award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

where "no useful purpose would be served by further administrative proceedings,

or where the record has been thoroughly developed," *Varney v. Sec'y of Health &*

*Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by

remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280

(9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a

district court may abuse its discretion not to remand for benefits when all of these

conditions are met).  This policy is based on the "need to expedite disability

claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that

must be resolved before a determination can be made, and it is not clear from the

record that the ALJ would be required to find a claimant disabled if all the

evidence were properly evaluated, remand is appropriate.  *See Benecke v.*

*Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172,

1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate.  *See*

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014)

(remand for benefits is not appropriate when further administrative proceedings

would serve a useful purpose).  Here, the ALJ failed to properly address Plaintiff's

migraine headaches for the period leading up to the implantation of the spinal

stimulator.  Plaintiff concedes that there was improvement, ECF No. 10 at 9,

opening the door for different RFC determinations for the periods before and after

the implantation.  "Where," as here, "not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Treichler*, 775 F.3d at 1101.  Instead, the Court remands this case for further proceedings consistent with this Order.

On remand, the ALJ should readdress the impairments at step two, reconsider the weight assigned to the medical opinions of Dr. Drenguis and Dr. Irwin, and reconsider Plaintiff's symptom claims.  In addition, the ALJ should supplement the record with any outstanding medical evidence.  If necessary, the ALJ should order additional consultative examinations and, if appropriate, take testimony from a medical expert.  The ALJ should reassess Plaintiff's RFC and take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

///

///

///

///

///

ORDER ~ 20

2.  Defendant's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED: this 2nd day of June 2020.



Stanley A. Bastian
United States District Judge

ORDER ~ 21